(263 P.3d 182)
No. 104,762

In the Matter of the Application of STROTHER FIELD AIRPORT for Exemption from Ad Valorem Taxation in Cowley County, Kansas.

Opinion filed August 26, 2011.

*William E. Muret*, of Winfield, for appellant.

No appearance by appellee.

Before GREENE, C.J., MARQUARDT and STANDRIDGE, JJ.

GREENE, C.J.: Strother Field Airport and Industrial Park (Strother Field) appeals a decision of the Court of Tax Appeals

(COTA) denying its application for an ad valorem tax exemption on property leased by General Electric Engine Services, Inc. (GE) for its business of refurbishing aircraft engines. Strother Field argues on appeal that the property qualifies for exemption under either K.S.A. 2010 Supp. 79-201q(a)(2) or K.S.A. 79-201r. Concluding that neither statute provides exemption for this property, we affirm COTA.

## Factual and Procedural Background

The cities of Winfield and Arkansas City (the Cities) jointly own and operate Strother Field, located in Cowley County. A governing body, known as the Strother Field Commission, manages and operates Strother Field pursuant to an Interlocal Cooperation Agreement (ICA) executed by the Cities on September 20, 1966. The Strother Field Commission is comprised of three members of the governing body of Winfield, three members of the governing body of Arkansas City, and one member of the Cowley County Board of Commissioners. Strother Field is financed entirely by non-tax revenue including money derived from the lease, rental, and sale of property to industries, farm income generated from an expanded area of land around the airport, and grants from the Federal Government.

On July 31, 2009, Strother Field filed an application requesting an ad valorem taxation exemption for a specified parcel of real estate pursuant to K.S.A. 79-201r. The parcel spans approximately 39 acres of land, and it contains three buildings comprising approximately 50,000 to 80,000 square feet of gross building area. The appraised value of the parcel is $7,350,100. GE currently occupies the buildings pursuant to a lease agreement with Strother Field. GE operates "a multi-hundred million dollar business" on the property, which refurbishes, reconditions, and rebuilds airplane engines. GE maintains an administrative office, workshops, testing and storage facilities, and a fueling depot on the land in the operation of its business.

It appears that Strother Field acquired the property on June 17, 2009, when GE deeded "all of its interest in and to" the subject property by quitclaim deed. On June 22, 2009, GE and Strother

Field entered into a lease agreement whereby Strother Field leased all of the land described in the quitclaim deed and the buildings, fixtures, and improvements located thereon to GE. The lease indicated that prior to the execution of the quitclaim deed, the Cowley County Appraiser designated GE as "the owner of the structures located on the property." Thus, the lease stated that it superseded several pre-existing leases for the property and had been executed in conjunction with the quitclaim deed in order to "clearly demonstrate" Strother Field as the owner of both the land and its structures.

The county appraiser reviewed Strother Field's application and recommended approval of the requested tax exemption, stating: "The lease clearly states that the landlord is the owner of both land and buildings. Due to Kansas statute 79-201r and the previously mentioned lease, the county has no option other than to agree to this request."

On February 8, 2010, COTA issued an order denying Strother Field's request for an exemption under both of two potentially applicable exemption statutes. The court explained that K.S.A. 79-201r only provides an exemption for property owned on and prior to January 1, 1992; because it found that Strother Field did not acquire the subject property until June 17, 2009, this section was inapplicable. COTA further explained that Strother Field did not qualify for an exemption under K.S.A. 2010 Supp. 79-201q(a)(2) because this section only provides an exemption for property owned and operated as an airport by a political subdivision and it found that Strother Field had failed to provide the necessary evidence to prove its status as a political subdivision.

On February 19, 2010, Strother Field filed a petition for reconsideration arguing that the subject property qualified for an exemption under K.S.A. 2010 Supp. 79-201q(a)(2) and requesting an opportunity to present additional evidence in support of this contention. On March 9, 2010, COTA granted Strother Field's request for reconsideration.

On April 23, 2010, COTA held a hearing to review Strother Field's petition for reconsideration. At the hearing, Strother Field argued that the subject property qualified for an exemption under

K.S.A. 2010 Supp. 79-201q(a)(2) because the revenue generated from GE's lease supports the continued operation of the airport and GE's business is of a type that is typically performed at an airport. Additionally, Cowley County expressed its support for the requested exemption and its belief that such an exemption was necessary, as "Strother Field and the work that GE is doing there just go hand-in-hand."

On July 14, 2010, COTA issued an order denying Strother Field's application for an exemption from ad valorem taxation. Although COTA found that the subject property is owned by a political subdivision, *i.e.*, the Cities, it held that the leased parcel did not qualify for an exemption under K.S.A. 2010 Supp. 79-201q(a)(2). COTA explained that there was "no evidence in the record to indicate that the subject property is leased for purposes essential to the operation of an airport." Instead, COTA found that GE was engaged in "strictly commercial endeavors" and, as such, the lease constituted an investment/business activity.

Strother Field filed a timely petition for judicial review.

## STANDARDS OF REVIEW

Orders from COTA are reviewed pursuant to the Kansas Judicial Review Act, K.S.A. 2010 Supp. 77-601 *et seq.* See *In re Tax Appeal of Sprint Communications Co.*, 278 Kan. 690, 694, 101 P.3d 1239 (2004). When, as in this case, the facts are not disputed, the question whether property is entitled to an exemption from ad valorem taxation is a question of law subject to de novo review. *In re Tax Exemption Application of Mental Health Ass'n of the Heartland*, 289 Kan. 1209, 1211, 221 P.3d 580 (2009).

Strother Field's arguments on appeal involve the interpretation of statutory language. Interpretation of a statute is a question of law over which an appellate court has unlimited review. *Unruh v. Purina Mills*, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607, 214 P.3d 676 (2009). When interpreting a statute, an appellate court must first attempt to "ascertain the legislature's intent through the statutory

language it employs, giving ordinary words their ordinary meaning." *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007). An appellate court does not speculate as to the legislative intent when a statute is plain and unambiguous and will not read into the statute something not readily found within it. Where there is no ambiguity in the statutory language, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the legislature's intent. *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271-72, 202 P.3d 7 (2009).

While taxing statutes must be interpreted strictly in favor of the taxpayer, "tax exemption statutes are interpreted strictly in favor of imposing the tax and against allowing an exemption for one that does not clearly qualify. [Citation omitted.]"; however, this rule of strict construction does not warrant an unreasonable statutory interpretation. *Mental Health Ass'n of the Heartland*, 289 Kan. at 1211. The party requesting the exemption has the burden of establishing its eligibility under the applicable statutory provision. *In re Tax Appeal of Genstler Eye Center & Clinic*, 40 Kan. App. 2d 411, 414, 192 P.3d 666 (2008).

DID COTA ERR IN DENYING EXEMPTION UNDER K.S.A. 79-201r?

At the outset, we note that Strother Field did not present this issue in its petition for reconsideration at COTA. Whether this omission limits our jurisdiction is a question we must examine on our own initiative. See *State v. Gill*, 287 Kan. 289, 294, 196 P.3d 369 (2008).

K.S.A. 2010 Supp. 74-2426(b) provides that the filing of a petition for reconsideration, in accordance with the provisions of K.S.A. 2010 Supp. 77-529, is a prerequisite to seeking judicial review of a decision by COTA. Pursuant to K.S.A. 2010 Supp. 77-529(a), a petition for reconsideration should state "the specific grounds upon which relief is requested." When a party fails to raise a specific ground for relief in the petition for reconsideration, that argument is not properly preserved for judicial review. In fact, in *Kansas Industrial Consumers v. Kansas Corporation Comm'n*, 30

Kan. App. 2d 332, Syl. ¶ 4, 42 P.3d 110 (2002), a panel of this court held that "[a]n issue not presented to the Kansas Corporation Commission in a petition for reconsideration cannot be decided on appeal." The panel in *Kansas Industrial Consumers* explained that issues not included in the petition for reconsideration cannot be raised in judicial review proceedings. 30 Kan. App. 2d at 338-39. In rendering its decision, the panel relied upon K.S.A. 66-118b, which states that a party challenging an order from the Kansas Corporation Commission may not rely upon a ground not set forth in the petition for reconsideration, and the requirement in K.S.A. 77-529(a) that a party seeking reconsideration state "the specific grounds upon which relief is requested." 30 Kan. App. 2d at 338. The panel explained:

"The purpose of requiring that all issues be included in the petition for reconsideration is to inform the KCC and other parties where mistakes of law and fact were made in the order. [Citations omitted.] Requiring a petition for reconsideration permits the KCC to correct errors which are called to its attention and thereby perhaps avoid judicial review. [Citation omitted.]" 30 Kan. App. 2d at 338.

Although K.S.A. 2010 Supp. 74-2426(b) does not contain a provision similar to K.S.A. 66-118b that specifically addresses the requirement to specify grounds for relief in a petition for reconsideration, we hold that same prohibition applies in cases involving COTA due to the language in K.S.A. 2010 Supp. 77-529(a) and the policy reasons set forth in *Kansas Industrial Consumers*. These pleading defects deprive us of jurisdiction to address the merits of Strother Field's argument on the applicability of K.S.A. 79-201r. Even if we were able to address the argument, however, we note that the record on appeal fails to establish that Strother owned the subject property "prior to and on January 1, 1992," a key requirement for exemption under K.S.A. 79-201r.

## DID COTA ERR IN DENYING EXEMPTION UNDER K.S.A. 2010 SUPP. 79-201q(a)(2)?

Strother Field also argues that COTA erred by denying its request for an exemption under K.S.A. 2010 Supp. 79-201q(a)(2). K.S.A. 2010 Supp. 79-201q(a) exempts certain property owned and

operated as an airport by a political subdivision from all property or ad valorem taxation. K.S.A. 2010 Supp. 79-201q(a) provides as follows:

"The following described property, to the extent herein specified, shall be and is hereby exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

"(a)(1) All property owned and primarily operated as an airport by a political subdivision, including property leased by the political subdivision for purposes not essential to the operation of an airport, for all taxable years commencing before January 1, 1993.

"(2) For all taxable years commencing after December 31, 1992, all property owned and primarily operated as an airport by a political subdivision, including property leased by the political subdivision for purposes essential to the operation of an airport. Payments in lieu of property taxes may be required for any or all of such years for such leased property, and such payments shall be apportioned and distributed in the same manner as general property taxes."

Thus, the subject property is entitled to an exemption under K.S.A. 2010 Supp. 79-201q(a)(2) if the following ownership and use requirements are satisfied: (1) The subject property must be owned or leased by a "political subdivision"; and (2) The subject property must be primarily operated as an airport or leased "for purposes essential to the operation of an airport."

We focus on the specific use requirement for leased property because it was on this basis that COTA denied exemption under this statute. Strother Field argued at COTA that the requirement was met because GE's business is for purposes essential to the operation of the airport "[b]ecause it is . . . a function of the type that would go on at the airport. Plus, it is essential in that operation for the monies that come from that lease for continued operation of the airport."

On reconsideration, COTA denied the exemption under 79-201q(a)(2), concluding in material part:

"[T]he Court finds that the subject property is not primarily operated as an airport. The Court finds no evidence of any airport uses of the subject property. The Applicant lease of the subject property to GE is primarily an investment/business activity. Further, there is no evidence in the record to indicate that the subject property is leased for purposes essential to the operation of an airport. GE's use of the subject property for manufacturing, engine repair, and airplane and engine testing are strictly commercial endeavors."

The record evidence establishes that the property is used by GE for its operations in refurbishing, reconditioning, and rebuilding of aircraft engines. The operation is a multi-hundred million dollar business in Cowley County. Strother Field argued at COTA that the property "benefits the airport and goes to the use of what an airport is there for. The refurbishing and rebuilding of the engines located at an airport where they test the engines, where they test planes coming in and out, just falls right into the use of an airport." According to the county appraiser, "Strother Field and the work that GE is doing there just go hand-in-hand. They need one another."

Although it is clear that the airport is critical to GE's operations, there is no evidence in the record to support an argument that GE's business is essential to the operation of the airport. In order to qualify for exemption under K.S.A. 2010 Supp. 79-201q(a)(2), it must be shown that the airport could not operate without the subject property or that the property is indispensable or basic to the function of an airport. It is not sufficient to show that the airport is essential to the business purposes of the leased property. In the absence of the required evidence, the exemption is inapplicable.

Strother Field's alternative argument, that the rentals from the lease of the subject property are indispensable to the airport, would have presumably exempted the property under K.S.A. 2010 Supp. 79-201q(a)(1) for tax years prior to January 1, 1993, but not thereafter.

In *Tri-County Public Airport Auth. v. Board of Morris County Comm'rs*, 245 Kan. 301, 777 P.2d 843 (1989), our Supreme Court held that " '[t]he mere fact that the [airport] receives rental income does not constitute "use" within the meaning of K.S.A. 1987 Supp. 79-201a *Second*.' " 245 Kan. at 309 (quoting *Salina Airport Authority v. Board of Tax Appeals*, 13 Kan. App. 2d 80, 84, 761 P.2d 1261 [1988]). The court rejected an application for exemption, concluding that "[o]wnership of property solely for the purpose of producing revenue which may ultimately be used to finance a governmental function, in this case the airport facility, is not exclusive use as defined by [the statute]." 245 Kan. at 310.

Even though these cases construed and applied a different exemption statute, it is clear that our Supreme Court recognized that the mere lease of property by a political subdivision to generate revenue for an airport was not use for a governmental or proprietary function. The statute before us here contains no requirement for *exclusive* use, but given the clear rejection in these cases of a revenue purpose as a qualifying purpose, it cannot be said that revenue generation alone satisfies an exemption statute requiring a "purpose essential to the operation of an airport."

K.S.A. 2010 Supp.79-201q(a)(1) provides for exemption of property leased by the political subdivision for purposes *not* essential to the operation of an airport, but it is limited to tax years prior to 1993. The current version of 79-201q(a)(1), (a)(2) was enacted in 1992 in apparent legislative response to the appellate court cases noted above. See L. 1992, ch. 171, sec. 1; McKenzie, *Survey of Kansas Law: Taxation*, 41 Kan. L. Rev. 727, 740-43. (Summer 1993) The subsequent enactment of 79-201q(a)(1) appears to provide limited relief in allowing such "revenue" use to qualify for an exemption for tax years prior to 1993, but not thereafter. To interpret the statute as urged by Strother Field would destroy the intended dichotomy between 79-201q(a)(1) and (a)(2).

COTA correctly denied Strother Field's application for exemption under K.S.A. 2010 Supp.79-201q(a)(2).

Affirmed.