******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

J.E. ROBERT COMPANY, INC. *v.* SIGNATURE
PROPERTIES, LLC, ET AL.
(SC 19483)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Vertefeuille, Js.

*Argued October 8, 2015—officially released January 5, 2016*

*Richard J. Buturla*, with whom was *Brian A. Lema*,
for the appellants (defendants Andrew J. Julian and

Michael Murray).

*Eric S. Goldstein*, with whom, on the brief, was *Patrick M. Fahey*, for the appellee (substitute plaintiff Shaw's New London, LLC).

*Opinion*

ZARELLA, J. In this appeal, we are asked to determine whether the trial court properly relied on the appraisal submitted by the substitute plaintiff, Shaw's New London, LLC (plaintiff), and the testimony of the plaintiff's appraiser in granting the plaintiff's motion for a deficiency judgment against the named defendant, Signature Properties, LLC (Signature), and the defendants Andrew J. Julian, Maureen Julian, and Michael Murray.[1] The defendants Andrew J. Julian and Murray (defendants) appeal from the trial court's judgment and claim that it was improper to rely on the appraisal and the appraiser's testimony because they expressed an opinion on the value of the leased fee interest in the mortgaged property and the plaintiff was required to establish the value of the fee simple interest. The defendants further argue that the value of the leased fee interest and fee simple interest of the mortgaged property are not equivalent. The plaintiff responds that it was proper to appraise the value of the leased fee interest in the mortgaged property because the day title to the property vested in the plaintiff, it was encumbered by three leases.[2] Alternatively, the plaintiff contends that the value of the leased fee and fee simple interests in the mortgaged property are equal because the leases were at market rates. We conclude that the trial court's reliance on the appraisal and the appraiser's testimony was proper and affirm its judgment.

On April 13, 2005, Signature executed a promissory note secured by a mortgage and security agreement on Signature's property at 6 Shaw's Cove in the city of New London.[3] The note and mortgage were guaranteed by Andrew J. Julian, Maureen Julian, and Murray (guarantors). In August, 2007, an action was commenced to foreclose the mortgage, and, on February 3, 2010, the trial court, *Shapiro, J.*, granted the plaintiff's motion for partial summary judgment. The court granted the plaintiff, among other things, the relief of foreclosure and an order permitting the plaintiff to seek a deficiency judgment against the guarantors. The trial court, *Bright, J.*, rendered a judgment of strict foreclosure on October 20, 2011, which was affirmed by this court on July 16, 2013. See *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 342, 71 A.3d 492 (2013). The trial court, *Sheridan, J.*, then granted the plaintiff's motion to open the judgment of strict foreclosure and set new law days for Signature and the guarantors. Neither Signature nor the guarantors redeemed by their respective law days, and title to the foreclosed property vested in the plaintiff on September 27, 2013.

The plaintiff subsequently filed a timely motion seeking a deficiency judgment against Signature and the guarantors, and a hearing was scheduled. At the hearing, the plaintiff offered the testimony of Daniel Barber, the senior vice president of Northeast Property Group,

Inc., the court-appointed receiver, and Mark Bates, the plaintiff's appraiser. The plaintiff also submitted nine exhibits, including Bates' appraisal report. Barber testified regarding the current conditions of the mortgaged property. On the basis of this testimony, the court found that the property had three tenants on September 27, 2013, the day title to the property vested in the plaintiff, who occupied approximately 60 percent of the building. The remaining 40 percent of the property was vacant, and it had been since 2008, despite Barber's efforts to lease the vacant space.

Bates' testimony and appraisal report "presented an opinion concerning 'the market value as is of the leased fee interest' of the mortgaged property . . . ." In reaching his opinion, Bates utilized the sales comparison and income capitalization approaches. The income capitalization approach employed two analyses, direct capitalization and discounted cash flow. To determine the projected income stream generated by the property, Bates utilized the contract rents for the occupied space, after determining they were at or near market rates, and applied market rent to the vacant space.[4] Bates did not use the cost approach, determining that it would be an inappropriate methodology in this case due to the age of the building and limited comparable land transactions. Moreover, the cost approach is generally employed only when valuing new or nearly new properties. Bates concluded, after considering the value indications from the sales comparison and income capitalization approaches, "that the market value as is of the leased fee interest in the mortgaged property was $5.3 million as of September 27, 2013," the day title to the mortgaged property vested in the plaintiff. In addition, Bates testified that there would be no significant difference in the valuation of the leased fee interest and the fee simple interest because the current contract rents were close to the market rents.

The defendants did not present any evidence to contradict or discredit Bates' valuation of the property but, instead, argued that the valuation was flawed because it valued the leased fee interest, and not the fee simple interest, in the property. The trial court credited Bates' testimony that the contract rents for the leased space were similar to the market rent for comparable space and concluded: "Under those circumstances, the value of the leased fee estate will be equivalent to the value of the fee simple estate, and the court is justified in using the valuation as is of the leased fee interest in arriving at its determination of the fair market value of the mortgaged property." The court therefore found the fair market value of the mortgaged property to be $5.3 million and rendered a deficiency judgment in the amount of $13,264,318.57.

The defendants appealed, claiming, in essence, that the trial court improperly relied on Bates' appraisal and

his testimony in determining the fair market value of the foreclosed property because they valued the leased fee interest of the property rather than the fee simple interest. The defendants make a number of arguments, but their arguments are all derivative of two underlying claims: (1) General Statutes § 49-14 (a) required the plaintiff to establish the fair market value of the fee simple interest of the mortgaged property; and (2) the valuation of the fee simple interest and leased fee interest of mortgaged property is not equal, even though the leases are at market rate.

We begin our analysis by setting forth the proper standard of review. It is in the trial court's province to determine the valuation of mortgaged property, usually guided by expert witnesses, relevant circumstances bearing on value, and its own knowledge. See, e.g., *Eichman* v. *J & J Building Co.*, 216 Conn. 443, 451, 582 A.2d 182 (1990). The trial court also determines the credibility and weight accorded to the witnesses, their testimony, and the evidence admitted. See, e.g., id., 451–52. Thus, the trial court's conclusion regarding the fair market value of the mortgaged property will be upheld "unless there was an error of law or a legal or logical inconsistency with the facts found." (Internal quotation marks omitted.) *New Haven Savings Bank* v. *West Haven Sound Development*, 190 Conn. 60, 70, 459 A.2d 999 (1983). Its determination of valuation will stand unless "it appears on the record . . . that the [trial] court misapplied or overlooked, or gave a wrong or improper effect to, any test or consideration which it was [its] duty to regard." (Internal quotation marks omitted.) Id.

The defendants contend that § 49-14 (a) requires the plaintiff, in order to receive a deficiency judgment, to establish the fair market value of the fee simple interest of the mortgaged property on September 27, 2013, the date title vested in the plaintiff. Their argument is as follows: First, § 49-14 (a) requires the party seeking a deficiency judgment to "establish a valuation for the *mortgaged property* . . . ." (Emphasis added.) Second, Connecticut follows the title theory of mortgages, meaning that, when a mortgage is executed, the mortgagee receives legal title to the property in the form of a vested fee simple subject to complete defeasance by the mortgagor's compliance with the mortgage conditions, i.e., timely payment of the debt secured by the mortgage. Third, "the mortgaged property" referred to in § 49-14 (a) is the fee simple interest because, under the title theory of mortgages, that is what vests in the mortgagee when the mortgage is executed. Therefore, § 49-14 (a) requires the plaintiff to establish the value of the fee simple, not the leased fee. We need not decide, however, whether § 49-14 (a) requires the plaintiff to establish the value of the fee simple interest in the mortgaged property because, as we discuss further in this opinion, when contract rents are at market rates,

the value of the leased fee and fee simple interests of mortgaged property is equivalent.

In the trial court, the defendants argued that the plaintiff's appraisal was flawed because it valued the leased fee interest rather than the fee simple interest of the mortgaged property. The trial court responded that a "leased fee interest is simply the fee simple interest encumbered by a lease. If the lease is at market rent, then the leased fee value and the fee simple value are equal." The defendants now argue before this court that the trial court's statement was an incorrect conclusion of law. We do not agree.

When employing the income capitalization approach to value the fee simple interest in an income producing property, such as the property at issue in the present case, an appraiser utilizes market rents. See Appraisal Institute, The Appraisal of Real Estate (12th Ed. 2001) pp. 480, 500. By multiplying the market rent by all rentable space, the appraiser can estimate the income the property would generate. See id., p. 480. Similarly, to value owner occupied properties under the income capitalization approach, market rent estimates are utilized. Id., p. 500. To value the leased fee interest in such property, however, contract rents—that is, those determined by current leases—are used for space under existing leases and market rents are used for vacant space. Id. Thus, when market rents and contract rents are equal, the valuation of the fee simple interest in a particular property and the leased fee interest in the same property will likewise be equal. The authors of The Appraisal of Real Estate support this conclusion: "When an [appraisal] involves the valuation of a leased fee interest, the appraiser often must also appraise the fee simple interest. If the rent and/or terms of the lease are favorable to the landlord (lessor), the value of the leased fee interest will usually be greater than the value of the fee simple interest, resulting in a negative leasehold interest. If the rent and/or terms of the lease are favorable to the tenant (or lessee), the value of the leased fee interest will usually be less than the value of the fee simple interest, resulting in a positive leasehold interest . . . . *The negative or positive leasehold interests will cease if contract rent and/or terms equal market rent and/or terms any time during the lease or when the lease expires.*" (Citation omitted; emphasis added.) Id., p. 82. Put another way, when contract rents are at market rates, the value of the leased fee and fee simple will be equal.

The holdings of other courts also support this conclusion. In *Walgreen Co.* v. *Madison*, 311 Wis. 2d 158, 752 N.W.2d 687 (2008), a tax assessment appeal, the Supreme Court of Wisconsin quoted with approval a state property assessment manual: "If the contract rent is at the same level as the market, the leased fee interest has the same value as a full interest (fee simple inter-

est)."[5] (Internal quotation marks omitted.) Id., 177; see also id., 176 ("[i]f the contract rents are at market levels . . . the leased fee interest is the same as a fee simple interest" [internal quotation marks omitted]). Similarly, in *In re Prieb Properties, L.L.C.*, 47 Kan. App. 2d 122, 275 P.3d 56 (2012), also a tax assessment appeal, the Court of Appeals of Kansas stated that "it is clear that the legislative intent underlying the statutory scheme of ad valorem taxation in [Kansas] has always been to appraise the property as if in fee simple, requiring property appraisal to use market rents instead of contract rents *if the rates are not equal*." (Emphasis added.) Id., 130. Implicit in the court's statement is the point that, when contract rents are equal to market rates, they do not affect the valuation of the fee simple interest in the appraised property. Our research has not uncovered any cases that hold to the contrary.

This conclusion is also consistent with our cases addressing valuation issues. For example, in *First Bethel Associates* v. *Bethel*, 231 Conn. 731, 651 A.2d 1279 (1995), we considered whether the contract rent a subject property receives should factor into the analysis of the market value of the property for tax assessment purposes. See id., 733. In *First Bethel Associates*, the defendant town contended that actual or contract rents should be considered only when they are equivalent to the market rents the property would command. Id., 740. We rejected that argument, explaining that such a rule "would mean that contract rent would factor into the analysis only if it had no effect on the overall valuation . . . ." Id. Implicit in our statement is the understanding that, when contract rents are at market rates, they do not impact the fair market value of the property. It follows, then, that, because a leased fee interest is valued using contract rents for leased space and market rents for vacant space, and a fee simple interest is valued using market rents for all rental space, when contract rents are at market rates, the leased fee and fee simple value will be equal.

The defendants cite to *First Fiscal Fund Corp.* v. *Manchester*, Superior Court, judicial district of Hartford-New Britain, Docket No. CV-91-0396739 (April 4, 1996), in support of their contention that the value of the leased fee interest and the fee simple interest in the subject property are not, as a matter of law, equivalent. That case, however, is inapposite. *First Fiscal Fund Corp.* was an appeal from the Board of Tax Review of the Town of Manchester and concerned the valuation of property located in Manchester. The plaintiffs' appraiser in that case valued both the leased fee interest and the fee simple interest in the subject property under the income capitalization approach. The appraiser valued the fee simple interest at $5.75 million and the leased fee interest at $4.12 million. The defendants in the present case point to this difference as evidence that the trial court's conclusion that the values

of the leased fee interest and fee simple interest are equal when contract rents are at market rates is incorrect. What the defendants overlook, however, is that the market rents and contract rents in *First Fiscal Fund Corp.* were *not* equal, as they are in the present case. That does not matter, the defendants assert, because the variance in the rents was only one difference that distinguished the appraisal of the fee simple interest from that of the leased fee interest. The defendants argue that, in addition to the different rent rates utilized in valuing the fee simple and leased fee interests in *First Fiscal Fund Corp.*, the appraiser also employed different assumptions under the fee simple valuation than he did under the leased fee valuation. There is nothing in *First Fiscal Fund Corp.*, however, to suggest that the different assumptions were based on the difference in the interest valued (fee simple or leased fee) rather than the difference in market lease rent rates and lease terms, and the actual rent rates and lease terms in that case.

At oral argument, the defendants contended that the valuation of the fee simple interest and leased fee interest would not be equal, even if rents are at market rates, because valuation of the leased fee interest ignores the possibility that the property may be purchased by an owner-occupier. The defendants explained that, if the property was purchased to be occupied by the owner, there would be no need for certain adjustments. We assume the defendants are referring to the lease-up expenses and the vacancy and collection loss. They provide no support for their argument, however, and we have found none. In fact, The Appraisal of Real Estate notes that, when valuing the fee simple interest in owner occupied properties under the income capitalization approach, the appraiser should use market rent estimates for the space. Appraisal Institute, supra, p. 500. Further, it indicates that it is appropriate "to make a deduction in the forecast time for the market to achieve 100 [percent] use and occupancy of the building. (This is analogous to the lease-up time needed to achieve stabilized occupancy in the tenanted properties.)" Id. Thus, when market rents and contract rents are equal, the valuation of the fee simple interest of an owner occupied property will be the same as the valuation of the leased fee interest in the property.[6]

Finally, the defendants claim that the trial court's finding of the fee simple value of the subject property was clearly erroneous because the plaintiff submitted no evidence of the value of the fee simple interest, that the plaintiff did not meet its burden of establishing the fair market value of the mortgaged property, and, therefore, that it is not entitled to a deficiency judgment. At trial, the plaintiff presented Bates' appraisal report and testimony, both of which noted that the value of the as is leased fee interest in the mortgaged property was $5.3 million. Bates also testified that the contract

rents for leased space at the mortgaged property were at market rates. The trial court credited Bates' appraisal report and his testimony.[7] In light of our conclusion that, when contract rents are at market rates, the value of the leased fee interest and fee simple interest in property is equal, and given the finding of the trial court that the terms of the existing leases in this case were similar to market terms, we cannot say that the trial court's fair market value finding was erroneous or improper, or that the plaintiff did not satisfy its burden of establishing the value of the mortgaged property.[8]

The judgment is affirmed.

In this opinion the other justices concurred.

[1] Stephanie Lord Drake and 280 Atlantic Street, LLC, also were named as defendants. Drake was, along with Andrew J. Julian, Maureen Julian and Murray, one of the guarantors of the note executed by Signature. The plaintiff did not pursue a deficiency judgment against Drake, however, because her liability was discharged in bankruptcy. She is not a party to this appeal. Moreover, 280 Atlantic Street, LLC, was defaulted for failure to appear and also is not a party to this appeal.

[2] We need not reach this argument because we decide this case on the plaintiff's alternative argument.

[3] The original note was payable to the order of JPMorgan Chase Bank, N.A. It was assigned, along with the mortgage and security agreement, to the plaintiff, Shaw's New London, LLC, on October 17, 2007.

[4] Bates concluded that the market rent for comparable space was $20 per square foot, and the contract rents for the leased space at the mortgaged property averaged $20.03 per square foot.

[5] We acknowledge that the Supreme Court of Wisconsin was relying on a 2007 state property assessment manual; see *Walgreen Co.* v. *Madison*, supra, 311 Wis. 2d 165 n.3; however, the authors of that manual draw on recognized practices of the appraisal profession. See, e.g., Wisconsin Dept. of Revenue, Wisconsin Property Assessment Manual (2014) introduction, available at https://www.revenue.wi.gov/slf/wpam/wpam14.pdf (last visited December 18, 2015). Moreover, the court also relied on the same edition of The Appraisal of Real Estate that we rely on in the present case. See, e.g., *Walgreen Co.* v. *Madison*, supra, 164–65, 168 and n.5.

[6] It is important to note that there does not appear to be any reason why Bates should have valued the subject property as an owner occupied facility. He concluded that the most likely buyer for the subject property would be an investor, and the defendants did not offer any evidence to contradict that conclusion.

[7] The defendants did not present any evidence to contradict Bates' testimony on this matter, or any other fact, and they do not challenge the trial court's finding that the contract terms were similar to the market terms.

[8] The defendants also argue that the trial court appears to have credited Bates' testimony that there would be no significant difference in the value of the leased fee interest and fee simple interest in the subject property and that crediting such testimony was clearly erroneous because Bates did not value the fee simple interest. After examining the trial court's memorandum of decision, however, we believe that the trial court credited Bates' testimony that the contract and market rents were equal and concluded, as a matter of law, that, under such circumstances, the value of the leased fee and fee simple will be equal. Thus, we do not address this argument.

We also conclude that the defendants' argument that the trial court's finding of fair market value was clearly erroneous because it was based on selected portions of the appraisal report is without merit. As we have explained, our examination of the trial court's memorandum of decision leads us to believe that its determination was based on the factual finding that market and contract rents were similar and the legal conclusion that, under such circumstances, the leased fee and fee simple values are equal rather than on selected portions of the appraisal report.