No. 122,162

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Equalization Appeals of WALMART STORES, INC; WALMART REAL ESTATE BUSINESS TRUST; SAM'S REAL ESTATE BUSINESS TRUST; and TMM ROELAND PARK CENTER, LLC, for the Year 2016 in Johnson County; and WALMART REAL ESTATE BUSINESS TRUST and SAM'S REAL ESTATE BUSINESS TRUST for the Year 2017 in Johnson County.

SYLLABUS BY THE COURT

1.

The Kansas Judicial Review Act, K.S.A. 77-601 et seq., governs appellate review of Kansas Board of Tax Appeals (BOTA) rulings. The party challenging BOTA's decision bears the burden of proving the invalidity of the action taken below.

2.

The Kansas Constitution grants the power of taxation to the legislative branch. Kansas Const. art. 11, § 1(a).

3.

In exercising its constitutional authority, the Kansas Legislature has enacted a statutory system to ensure that non-exempt property is appraised for ad valorem tax purposes in a uniform and equal manner. K.S.A. 79-101 et seq.

4.

In determining the validity of the valuation of real property for ad valorem tax purposes, the essential question is whether the standards set forth in Kansas statutes have been appropriately considered and applied.

5.

Statutory provisions relating to the imposition of a tax are to be strictly construed in favor of the taxpayer.

6.

In determining the fair market value of real property for ad valorem tax purposes, a taxing entity must assume a hypothetical sale of the property as of January 1 of the applicable tax year. K.S.A. 79-1455.

7.

Fair market value is the amount that a well-informed buyer is justified in paying and a well-informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion. K.S.A. 79-503a. In other words, the hypothetical sale envisioned by K.S.A. 79-1455 is to reflect actual conditions in an open and competitive market.

8.

Valuation appeals before BOTA are to be decided upon a determination of the fair market value based on fee simple ownership of the property. K.S.A. 74-2433(g).

9.

A fee simple interest means an absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the government and is the equivalent to ownership of the complete bundle of property rights that can be privately owned. Such an interest is to be contrasted from a lease fee interest that includes the right to collect rent under the terms of a lease as well as a reversionary right upon expiration of the lease.

10.

For the purposes of ad valorem taxation, Kansas law requires the valuation of the fee simple estate and not the leased fee interest.

11.

A commercial build-to-suit lease is not—in and of itself—reflective of actual rental rates in an open and competitive market.

12.

Kansas law does not prohibit build-to-suit leases from being taken into consideration in determining the fair market value of real property in an open and competitive market. However, if a taxing entity seeks to rely on the rental rates in build-to-suit leases as comparables, it must either show that the lease rates are equal to actual market rates or make any adjustments necessary to isolate above-or-below market rents so that the build-to-suit leases are reflective of the actual market conditions.

13.

Under the doctrine of stare decisis, a point of law established by an appellate court will generally be followed by the same court and all courts of a lower rank in later cases or controversies involving the same legal issue. The doctrine of stare decisis promotes stability and continuity in our legal system. As a result, appellate courts endeavor to adhere to the doctrine of stare decisis unless clearly convinced that the rule of law was originally erroneous or is no longer sound based on changing conditions.

14.

In deciding tax appeals, BOTA is statutorily bound to follow the published opinions of appellate courts. K.S.A. 74-2433(a).

15.

It is the role of the Kansas Legislature—not the courts or BOTA—to implement shifts in state tax policy.

Appeal from Board of Tax Appeal. Opinion filed October 8, 2021. Affirmed.

*Ryan L. Carpenter*, assistant county counselor, for appellant Board of Johnson County Commissioners.

*Linda A. Terrill*, of Property Tax Law Group, LLC, of Overland Park, for appellees Walmart Stores, Inc., et al.

Before POWELL, P.J., BRUNS, J., and STEVE LEBEN, Court of Appeals Judge Retired, assigned.

BRUNS, J.:  The Board of Johnson County Commissioners (Johnson County) seeks judicial review of the unanimous decision of the Board of Tax Appeals (BOTA) establishing the valuations of 11 pieces of real property for ad valorem tax purposes. Currently, nine Walmart stores and two Sam's Club stores are operated on the subject properties. With the exception of one property that is leased, Walmart Inc.—or one of its wholly owned subsidiaries—owns each of the pieces of real property. After receiving Johnson County's appraised values of the 11 properties, Walmart appealed to BOTA. After an evidentiary hearing, BOTA lowered the valuations on each of the properties and ordered that Johnson County refund Walmart for any overpayment made for the 2016 and 2017 tax years.

In this judicial review action, Johnson County contends that BOTA erroneously interpreted and applied the law, that its decision is not supported by substantial competent evidence, and that its decision was unreasonable, arbitrary, or capricious. For the reasons set forth in this opinion, we conclude that BOTA appropriately followed Kansas law, that

4

its decision was supported by substantial competent evidence when the record is reviewed as a whole, and that its decision was not unreasonable, arbitrary, or capricious. Thus, we affirm.

FACTS

This judicial review action represents a continuation of an ongoing dispute in the appraisal industry over the appropriate methodology to use in valuing real property associated with the operation of what are known as big-box retail stores. These stores—which are usually a single story—occupy large amounts of space and offer a large inventory of merchandise to consumers. The term "big-box" is derived from the physical appearance of such stores.

Although the parties differ on the weight to be given to the evidence, most of the facts that are material to the issues presented in this action are not in dispute. The 11 tracts of real property that are the subject of this action are currently used for the operation of either a Walmart or a Sam's Club store. The buildings located on the subject property range in size from approximately 108,000 square feet to approximately 227,000 square feet. The oldest building was constructed in 1991 and the newest building was constructed in 2013.

Although Walmart appealed the valuations of each of the subject properties separately, all of the appeals were consolidated by BOTA into one action based on the agreement of the parties. Likewise, the parties stipulated that the highest and best use of each of the subject properties is as a single tenant retail store. For 10 of the pieces of real property, Walmart challenged Johnson County's appraisal for the 2016 and the 2017 tax years. However, for one piece of property that is leased from a third-party limited liability company, this action only involves Johnson County's appraisal for the 2016 tax year.

In appealing to BOTA, Walmart pointed out that the 2016 appraisals of the subject properties were nearly double the appraised values for the same properties for the 2015 tax year. According to Walmart, this substantial increase was a result of Johnson County using an appraisal methodology that improperly added value based on the type of businesses currently operating on the properties. In response, Johnson County argued that it used a generally accepted appraisal method in valuing the subject properties and suggested that the rental rates in build-to-suit leases are indicative of actual market conditions.

BOTA conducted an evidentiary hearing from January 7, 2019, to January 18, 2019. Prior to the hearing, the parties submitted the pre-filed testimony of several witnesses as well as transcripts of testimony presented in another case that were incorporated into the record in this matter by agreement. At the evidentiary hearing, Johnson County presented the testimony of six expert witnesses, including Bernie Shaner, MAI, and introduced numerous exhibits in support of its valuations of the subject properties. Similarly, Walmart presented the testimony of eight expert witnesses, including Gerald Maier, MAI, and introduced numerous exhibits in support of their valuations of the subject properties.

At the hearing, Johnson County primarily relied on the income approach to support its valuations of the subject properties. The County's income approach utilized data derived from a market study co-authored by Shaner. According to Shaner, the market study used rental rates from build-to-suit comparables because the authors believed they were illustrative of market conditions. However, Shaner acknowledged that the study contained no analysis to show how the rental rates set out in the build-to-suit leases reflected actual market conditions nor did the study make any attempt to separate out any non-realty components that might be included in the build-to-suit lease comparables.

In presenting its case, Walmart primarily relied on the valuation opinions expressed by Maier. In rendering his opinions regarding the valuation of the subject properties, Maier testified that he examined comparable sales of real property on which big-box retail stores were operated but excluded those that involved build-to-suit leases, those that involved leaseback sales, and those that involved the sale of second generation leased properties. According to Maier, he excluded these sales in order to focus on comparables that involved fee simple sales. Maier also testified that he adjusted the sale prices for time and market conditions, location, quality and utility, and investment quality to derive a square foot unit value that he then applied to each of the subject properties.

Maier's income approach for each property consisted of both a direct capitalization analysis and a discounted cash flow analysis. For his direct capitalization analysis, Maier rendered the opinion that sales in which the property is sold vacant and available to be leased at market rates were the most probative for determining actual market value of the fee simple estates of the subject properties. Maier also testified that he adjusted each of the comparables for time and market conditions, lease terms, suite size, age and condition, location, quality of construction, and utility. In addition, Maier testified about his opinions regarding the appropriate capitalization rates to be applied to each of the subject properties.

On June 26, 2019, BOTA issued a summary decision in which it found that the "income approach direct capitalization methodology based on projected net operating income"—which was presented by Maier on behalf of Walmart—was the best indicator of the actual market value of the real property for ad valorem purposes. Nevertheless, BOTA adjusted the capitalization rates used by Maier on all but two of the properties because it found that the evidence supported an 8.5% capitalization rate rather than a 10% capitalization rate on nine of the properties. For the other two properties, BOTA found the appropriate capitalization rate to be 9%. Accordingly, BOTA remanded the

7

matter to Johnson County to recalculate the taxes owed based on its valuations of the subject properties and to refund any overpayment made by Walmart.

As allowed by K.S.A. 74-2426(a), both Johnson County and Walmart made timely requests to BOTA for a full and complete opinion. On September 25, 2019, BOTA issued a unanimous 14-page full and complete opinion. In the opinion, BOTA made both findings of fact and conclusions of law. In particular, BOTA cited several Kansas tax statutes as well as several cases interpreting tax law as authority in support of its legal conclusions.

After considering the evidence presented by the parties, BOTA found:

> "Each party presented expert appraisals designed to determine the fair market value of the real property at issue. Due to the nature of the subject property—first generation big-box stores—build-to-suit and sale/leaseback comparables can often be a significant segment of the universe of comparables available. The parties' experts employed disparate appraisal methodologies and . . . legal theories to derive a market rent for the subject real property. Kansas law, however, is well settled on the legal disputes presented and the County admittedly is making its record for an appeal seeking the reversal of Kansas precedent, most significantly, *In re Prieb Properties, L.L.C.*, 47 Kan. App. 2d 122, 275 P.3d 56 (2012)."

BOTA then recognized that it is statutorily bound under K.S.A. 74-2433(a) to follow the published opinions of Kansas appellate courts. Furthermore, BOTA noted that in the case of *In re Equalization Appeal of Prieb Properties*, 47 Kan. App. 2d 122, 275 P.3d 56 (2012), this court found that the rental rates in build-to-suit leases are not to be relied on in appraising real property for ad valorem tax purposes without first making the appropriate adjustments to reflect market conditions. BOTA also noted that this court subsequently held in the case of *In re Equalization Appeal of Target Corporation*, 55 Kan. App. 2d 234, 410 P.3d 939 (2017), that appraisals based upon the valuation of real

property as "'vacant and available to be leased at market rent'" complied with the standards set forth in the Uniform Standards of Professional Appraisal Practice (USPAP). In addition, BOTA cited *In re Equalization Appeal of ARC Sweet Life Rosehill*, No. 113,692, 2016 WL 3856666, at *15 (Kan. App. 2016) (unpublished opinion), for the proposition that it is permissible to "determine the difference between the value of the property under a hypothetical vacant condition and its value as occupied in order to isolate the value of the taxable real estate separate and apart from the business being conducted on it."

After reviewing the evidence and the applicable law, BOTA found that "[t]he County's appraisals heavily relied on build-to-suit comparables, yet [the appraisers] did not perform proper appraisal adjustments . . . to ensure their derived appraisal inputs were free from any value attributable to the leased fee interest." BOTA also emphasized that although the County relied on the market study co-authored by Shaner to support its appraised values of the subject properties, the study failed to make adjustments to its build-to-suit comparables to reflect actual market conditions. Hence, BOTA concluded that it did not find the testimony of Johnson County's appraisal experts or the market study to be persuasive.

On the other hand, BOTA found that the appraisals performed by Maier on behalf of Walmart better reflected the actual market values of the subject properties. Specifically, BOTA found that "Maier's income approaches (direct capitalization methodology) based on projected net operating income is the best indicator of the market value presented." Likewise, BOTA found "Maier's appraisal decisions and adjustments regarding his selection of market data" to be persuasive in arriving at the fair market value of the Walmart properties for ad valorem tax purposes.

Ultimately, BOTA adopted Maier's valuations with the adjustments to the capitalization rate that it had previously made in its summary decision. As a result,

9

BOTA again ordered Johnson County to recalculate the amount of ad valorem taxes owed on the subject properties and to refund any overpayment made by Walmart. Subsequently, Walmart filed a motion for reconsideration on two issues, which BOTA granted in part and denied in part. Thereafter, Johnson County timely filed a petition for judicial review with this court.

ANALYSIS

*Issues Presented*

There are three issues presented in this judicial review action. First, whether BOTA erroneously interpreted and applied Kansas law in reaching its final decision. Second, whether there is substantial competent evidence—when viewed in light of the record as a whole—to support BOTA's final decision. Finally, whether BOTA's final decision is unreasonable, arbitrary, or capricious.

*Standard of Review*

Our review of BOTA decisions is controlled by the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. See *In re Tax Appeal of River Rock Energy Co.*, 313 Kan. 936, 943, 492 P.3d 1157 (2021); see also *In re Equalization Appeal of Wagner*, 304 Kan. 587, 597, 372 P.3d 1226 (2016). Specifically, K.S.A. 77-621(c) sets out the limited circumstances under which we may properly grant relief. Just as Johnson County bore the burden of proof before BOTA under K.S.A. 79-1609, it continues to bear the burden of proof in this judicial review action pursuant to K.S.A. 77-621(a)(1). Even if we find that BOTA erred, we are not to reverse its final decision if we find the error to be harmless. K.S.A. 77-621(e).

When construing statutory provisions relating to the imposition of a tax, we are to construe them strictly in favor of the taxpayer. See *In re River Rock Energy Co.*, 313

10

Kan. at 944; see also *In re Tax Appeal of BHCMC*, 307 Kan. 154, 161, 408 P.3d 103 (2017); *In re Tax Protest of Strayer*, 239 Kan. 136, 141, 716 P.2d 588 (1986) ("Tax statutes are penal, and thus must be strictly construed in favor of the taxpayer."). In determining the validity of the valuation of real property for ad valorem tax purposes, the essential question is whether BOTA appropriately considered and applied the standards set forth in Kansas tax statutes and caselaw interpreting those statutes. See *In re Equalization Appeal of Tallgrass Prairie Holdings*, 50 Kan. App. 2d 635, 649, 333 P.3d 899 (2014). If the appropriate standards were considered and applied, we will reverse only if we find BOTA's decision to be "so wide of the mark as to be outside the realm of fair debate." *In re Tax Appeal of Dillon Stores*, 42 Kan. App. 2d 881, 889, 221 P.3d 598 (2009) (citing *In re Tax Appeal of Horizon Tele-Communications, Inc.*, 241 Kan. 193, 203, 734 P.2d 1168 [1987]).

*BOTA Correctly Applied Existing Kansas Law*

In this judicial review action, Johnson County contends that BOTA erroneously interpreted or applied Kansas law in arriving at the valuation of the Walmart properties for the purposes of ad valorem taxation. See K.S.A. 77-621(c)(4). In reality, the County is asking us to depart from existing Kansas law. In particular, the County is asking us to find that *In re Prieb Properties*, 47 Kan. App. 2d 122, was wrongly decided. Our review of whether BOTA erroneously interpreted or applied the law is unlimited. See *In re Tax Appeal of BHCMC*, 307 Kan. at 161.

<u>*Ad Valorem Taxation in Kansas*</u>

The Kansas Constitution grants the power of taxation to the legislative branch. Specifically, Article 11, section 1(a) of our Constitution provides that "the legislature shall provide for a uniform and equal basis of valuation and rate of taxation of all property subject to taxation." Accordingly, the Kansas Legislature has enacted a statutory

11

system to ensure that non-exempt property is appraised for ad valorem tax purposes in a uniform and equal manner. See K.S.A. 79-101 et seq. One of the fundamental principles of this statutory system is that in appraising real property for ad valorem tax purposes, a taxing entity must determine the fair market value of property assuming a hypothetical sale occurring on January 1 of the applicable tax year. K.S.A. 79-1455.

In turn, K.S.A. 79-503a defines "fair market value" to mean "the amount in terms of money that a well-informed buyer is justified in paying and a well-informed seller is justified in accepting for property *in an open and competitive market*, assuming that the parties are acting without undue compulsion." (Emphasis added.) In other words, the hypothetical sale required by K.S.A. 79-1455 serves as "a surrogate for a real marketplace event." *Hixon v. Lario Enterprises, Inc.*, 19 Kan. App. 2d 643, 646, 875 P.2d 297 (1994), *aff'd as modified* 257 Kan. 377, 892 P.2d 507 (1995). Thus, in valuing real property for ad valorem tax purposes, the ultimate goal is to determine a fair market value that is reflective of the actual conditions in an open and competitive market at the time of the hypothetical sale.

### *Definition of a Fee Simple Interest*

Kansas law also requires that the valuation of real property for ad valorem tax purposes must be based on a determination of the fair market value of the fee simple interest in the subject property. See K.S.A. 74-2433(g) ("Valuation appeals before the board shall be decided upon a determination of the *fair market value of the fee simple* of the property." [Emphasis added.]); see also *In re Equalization Proceeding of Amoco Production Co.*, 33 Kan. App. 2d 329, 336-40, 102 P. 3d 1176 (2004) (Kansas law contemplates the valuation of the fee simple interest in real property.). Moreover, the fee simple interest in real estate consists of tangible property but excludes intangible property interests. See K.S.A. 79-101; K.S.A. 79-102 (only tangible property taxable); see also *In re Tax Protest of Strayer*, 239 Kan. at 142.

12

As recognized in *Prieb*, "the legislative intent underlying the statutory scheme of ad valorem taxation in our State has always been to appraise the property as if in fee simple, requiring property appraisal to use market rents instead of contract rents if the rates are not equal." 47 Kan. App. 2d at 130. In *Prieb*, the panel looked to The Appraisal of Real Estate to define the term "fee simple interest" to mean an "'[a]bsolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat'" and is the "'equivalent to ownership of the complete bundle of sticks [property rights] that can be privately owned.'" 47 Kan. App. 2d at 130 (quoting The Appraisal of Real Estate, pp. 112, 114 [13th ed. 2008]). We note that this definition of "fee simple interest" continues to be used in the most current edition of The Appraisal of Real Estate, p. 60 (15th ed. 2020).

Although the County recognizes The Appraisal of Real Estate to be an authoritative source for generally accepted appraisal practice, the County suggests it is not authoritative for the purposes of legal analysis. Regardless, we find that this definition of "fee simple interest" adopted in *Prieb* accurately reflects the current status of Kansas law. It is also important to recognize that Kansas appellate courts have relied upon this definition for nearly a decade. In *Creegan v. State*, 305 Kan. 1156, 1165, 391 P.3d 36 (2017), the Kansas Supreme Court cited *Prieb* for the definition of "fee simple interest" in resolving an eminent domain case. Moreover, multiple panels of this court have relied on *Prieb* for the definition of "fee simple interest" over the years. See, e.g., *In re Equalization Appeal of Kansas Star Casino*, 52 Kan. App. 2d 50, 61, 362 P.3d 1109 (2015); *In re Tax Appeal of Arciterra BP*, No. 121,438, 2021 WL 1228104, at *7 (Kan. App. 2021) (unpublished opinion); *ARC Sweet Life Rosehill*, 2016 WL 3856666, at *9.

Here, Johnson County seeks to redefine the term "fee simple" or "fee simple interest" to mean "fee simple subject to a lease." An adoption of the alternative definition proposed by the County would involve a significant shift in Kansas tax policy and could

13

have a substantial impact on the valuation of property in this State for the purposes of ad valorem taxation. As noted above, K.S.A. 74-2433(g) currently requires BOTA to decide tax appeals based "upon a determination of the fair market value of the fee simple of the property." Under existing tax policy, value attributable to a contract right—such as a lease—is not appropriately added to the value of the fee simple estate. See K.S.A. 79-102; *Strayer*, 239 Kan. at 142.

As a panel of this court recently found in *In re Tax Appeal of Arciterra BP*, 2021 WL 1228104, at *9, Johnson County has not shown that the definition of "fee simple interest" in *Prieb* from The Appraisal of Real Estate is wrong. Instead, the County has simply found a definition that it prefers and invites us to replace it with the definition relied upon by Kansas courts and BOTA since 2012. Although we understand the County's incentive to do so in order to increase its revenue at the expense of Kansas taxpayers, we respectfully decline the invitation to implement such a major shift in tax policy. Furthermore, we find that the definition of "fee simple interest" set forth in *Prieb* and its progeny accurately reflects the current status of Kansas law. Accordingly, we conclude that BOTA was statutorily required to apply the definition in this action pursuant to K.S.A. 74-2433(a).

### *Consideration of Build-to-Suit Leases*

As noted above, this action represents another chapter in a continuing policy debate regarding the methodology that should be used to value single-tenant properties—such as big-box retail stores—for ad valorem tax purposes. In particular, the ongoing dispute involves the role of build-to-suit leases—and the rental rates found in such leases—in the valuation process. In interpreting Kansas tax law, our court has recognized on several occasions that the rental rates in build-to-suit leases do not—in and of themselves—reflect the current rental rates in an open and competitive market at the time of the hypothetical sale envisioned by K.S.A. 79-1455. See, e.g., *In re Target*

14

*Corporation*, 55 Kan. App. 2d at 244; *In re Prieb Properties*, 47 Kan. App. 2d at 131-32; *Arciterra*, 2021 WL 1228104, at \*10; *ARC Sweet Life Rosehill*, 2016 WL 3856666, at \*15.

Johnson County focuses much of its argument on challenging the *In re Prieb Properties* opinion that was written by former Chief Judge Richard D. Greene in 2012. The County goes so far as to argue that *Prieb* was "poorly researched, provides no specificity, and results in confusion." Although we appreciate the County's zealous advocacy, we find such attacks on *Prieb* to be—at best—misguided. Moreover, we note that the County's argument overlooks the fact that the legal principles set forth in *Prieb* have subsequently been followed and explained by other panels of our court.

In *Prieb*, after concluding that the Kansas Legislature intended ad valorem taxation to be based on the fee simple interest, the panel turned to the question of whether the rental rates in build-to-suit leases are reflective of actual market conditions. 47 Kan. App. 2d at 132. In doing so, the panel compared build-to-suit leases to financing agreements in that "the rental rates therein are based in large part upon the revenue needed to amortize the investment required for the required construction—plus a measure of profit—over the lease term or extensions thereof." 47 Kan. App. 2d at 132. As such, the panel found that the agreed upon rental rates in a build-to-suit lease are not necessarily reflective of market rental rates because they are often "designed to amortize an investment made at the outset and may vary dependent on factors that are unrelated to the real estate market thereafter." 47 Kan. App. 2d at 133.

The *Prieb* panel concluded that build-to-suit leases "may not be utilized for purposes of the income approach or the sales comparison approaches to value for ad valorem tax purposes in Kansas without a disentanglement by adjustments that is beyond the scope of this appeal." 47 Kan. App. 2d at 135-36. Notwithstanding, Johnson County argues that this holding is actually dicta. In making this argument, the County takes the

15

words "beyond the scope of this appeal" out of context. Reviewing the opinion in its entirety, it is readily apparent that the *Prieb* panel intended to hold that the rental rates agreed upon by the parties to a build-to-suit lease should not be used under the income or sales comparison approaches to value real property unless they can be disentangled by adjustments to bring them into line with actual market conditions. The only question that was beyond the scope of the appeal was the type of adjustments that may need to be made to accurately value a specific tract of real estate for ad valorem tax purposes. Consequently, we do not find the holding in *Prieb* to be dicta nor has it been treated as such in subsequent opinions issued by this court dealing with this issue.

In 2016, the panel in *ARC Sweet Life Rosehill* held that it is appropriate for BOTA to "determine the difference between the value of the property under a hypothetical vacant condition and its value as occupied in order to isolate the value of the taxable real estate separate and apart from the business being conducted on it." 2016 WL 3856666, at *15. The following year, in the case of *In re Target Corporation*, another panel of this court found this approach to be reasonable. 55 Kan. App. 2d at 244. In addition, the panel explained that "[w]hen valuing property, an appraiser may determine the difference between the value of the property under a hypothetical vacant condition and its value as occupied in order to isolate the value of the taxable real estate separate and apart from the business being conducted on it." 55 Kan. App. 2d 234, Syl. ¶ 7.

As the Honorable Patrick D. McAnany wrote in *ARC Sweet Life Rosehill*, "[t]he ultimate object of this exercise [is] to determine the true value of the real estate upon which to levy taxes and not to levy taxes based on the value of the business located on the real estate." 2016 WL 3856666, at *15. We agree. Likewise, we note that in *ARC Sweet Life Rosehill*, it was Johnson County that cited *Prieb* for the proposition "that rental rates contained in or reflected by commercial build-to-suit leases do not reflect market conditions and cannot be used for purposes of the income approach or the sales

16

approach." 2016 WL 3856666, at *20. Of course, this is completely opposite from the position that Johnson County has taken in this action.

We also note that earlier this year, in *Arciterra*, Johnson County made arguments that are substantially similar to those that it is making in this action. In finding no reason to depart from the legal principles set forth in *Prieb* and its progeny, the *Arciterra* panel accurately summarized the current status of Kansas law as follows:

"As our cases explain, when valuing a property under the income approach, the fee simple interest in property must be valued based on an estimate of market rent, not contract rent. See *Prieb*, 47 Kan. App. 2d at 131-32. This is because value attributable to a contract right is not appropriately added to the value of the fee simple estate. See K.S.A. 79-102; *Strayer*, 239 Kan. at 142. Still, the market rent determination should consider the value that leases may contribute. So we determine market rent by considering the terms of a lease that a hypothetical buyer and seller could freely negotiate in an arm's length transaction. See *Southlake Indiana LLC v. Lake County Assessor*, 135 N.E.3d 692, 697-98 (Ind. T.C. 2019), *transfer denied* 143 N.E.3d 961 (2020) (citing The Appraisal of Real Estate, 447, 466 [14th ed. 2013])." 2021 WL 1228104, at *10.

The *Arciterra* panel also correctly pointed out:

"Kansas law does not hold that build-to-suit leases may never be considered in determining market rent. If, for example, an appraiser can show that a build-to-suit lease was motivated by market terms and can isolate above- or below-market rents to make the necessary adjustments, BOTA could find that a market rent determination is properly supported and based on appropriate, comparable leases. See, e.g., *Southlake Indiana LLC*, 135 N.E.3d at 697-98." 2021 WL 1228104, at *10.

Like the panel in *Arciterra*, we conclude that the legal principles set forth in *Prieb* and its progeny continue to accurately reflect Kansas law regarding the valuation of real property for the purposes of ad valorem taxation. As the panel in *Arciterra* found, our caselaw does not prohibit BOTA from taking the rental rates found in build-to-suit leases

17

into consideration in valuing real property. Rather, our caselaw simply recognizes that build-to-suit leases do not—in and of themselves—represent actual market conditions. As a result, taxing entities seeking to use the rental rates in build-to-suit leases as part of their valuation process should be prepared to either come forward with evidence to establish that they are equal to actual market rents or show that appropriate adjustments have been made to bring the lease rates in line with the actual conditions in an open and competitive market.

Based on our review of the record, we do not find that BOTA prevented Johnson County's appraisal experts from presenting evidence to show that the rental rates in their build-to-suit lease comparables were equal to actual market conditions. Likewise, we do not find that BOTA prevented the County's appraisal experts from making the necessary adjustments to bring the rental rates in their build-to-suit lease comparables in line with actual market conditions. Instead, the County failed to meet its burden of proof because it made the decision to stand on its belief that the rental rates in its build-to-suit lease comparables inherently reflected the actual rental rates in an open and competitive market.

*Application of Stare Decisis*

The doctrine of stare decisis provides that once a point of law is established by the courts, it will generally be followed by the same court and all courts of a lower rank in later cases in which the same legal issue is raised. *State v. Clark*, 313 Kan. 556, 565, 486 P.3d 591 (2021) (quoting *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362-63, 361 P.3d 504 [2015]). The doctrine promotes the stability of our legal system and provides continuity regarding the interpretation of law. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 310 Kan. 644, 669, 448 P.3d 383 (2019). Courts should endeavor to adhere to established legal principles unless they are clearly convinced that the point of law was

18

originally erroneous or no longer legally sound. *State v. Hambright*, 310 Kan. 408, 416, 447 P.3d 972 (2019).

Adherence to established legal principles is perhaps even more important in tax appeals because BOTA is statutorily bound under the provisions of K.S.A. 74-2433(a) to follow the published opinions of Kansas appellate courts. Significantly, both *In re Prieb Properties* and *In re Target Corporation* are published opinions that BOTA is duty bound to follow. Moreover, "[t]he doctrine of stare decisis is particularly compelling in cases where, as here, the legislature is free to alter a statute in response to court precedent . . . but declines to do so." *State v. Quested*, 302 Kan. 262, 278, 352 P.3d 553 (2015); see also *McCullough v. Wilson*, 308 Kan. 1025, 1036, 426 P.3d 494 (2018).

As discussed above, *Prieb* was decided in 2012 and the legal principles established in the opinion have been relied on by courts, by BOTA, by attorneys, by appraisers, and by litigants for nearly a decade. Likewise, the Kansas Legislature has not amended the tax statutes to express displeasure with the definition of "fee simple interest" adopted in *Prieb* nor has it enacted legislation to alter the way in which build-to-suit leases are to be considered in the valuation of real property for ad valorem tax purposes.

If anything, the 2016 amendment to K.S.A. 74-2433 passed by the Kansas Legislature indicates that *Prieb* and its progeny accurately reflect legislative intent. This amendment confirmed that BOTA is required to decide valuation appeals based "upon a determination of the fair market value of the *fee simple* of the property." (Emphasis added.) L. 2016, ch. 112, § 4. Similarly, the panel in *Prieb* found that the legislative intent underlying the ad valorem taxation system in Kansas requires that property be appraised in fee simple and requires appraisals to use rental rates that reflect actual market conditions. 47 Kan. App. 2d at 130.

19

The Kansas Legislature's continued acquiescence to *Prieb* and its progeny is a strong indication that it accurately reflects legislative intent regarding the valuation of real property for ad valorem tax purposes. See *Clark*, 313 Kan. at 569. Moreover, we are not clearly convinced that *Prieb* or its progeny were wrongly decided nor do we find that the legal principles set forth in those opinions are no longer sound because of changing conditions. At most, we find that the County has presented an argument in support of its position in the ongoing policy dispute regarding the methodology to use in the appraisal of real property on which big-box retail stores or similar businesses are operated.

### *Public Policy Considerations*

This judicial review action must ultimately be decided based on existing Kansas law and not on policy arguments. See *In re Equalization Appeal of Johnson County Appraiser*, 47 Kan. App. 2d 1074, Syl. ¶ 9, 283 P.3d 823 (2012). As addressed above, under the Kansas Constitution, it is the Kansas Legislature that is granted the authority to enact the statutory framework for the valuation and taxation of non-exempt property. Likewise, it is the role of the Legislature—and not the courts or BOTA—to implement a shift in ad valorem tax policy in Kansas. *In re Tax Appeal of Wedge Log-Tech*, 48 Kan. App. 2d 804, 816-17, 300 P.3d 1105 (2013); see also *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 348, 277 P.3d 1062 (2012) (the legislative branch is charged with development of public policy). Consequently, we suggest that the people of Kansas would be better served if the policy issues raised in this action were presented for debate and resolution in the Kansas Legislature rather than in the courts.

### *Substantial Competent Evidence*

Johnson County further contends that BOTA's decision was not based on substantial competent evidence. We may grant relief under K.S.A. 77-621(c)(7) only if it is established that the decision was "based on a determination of fact . . . that is not

supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review." Substantial competent evidence possesses both relevance and substance. It provides a sufficient basis of fact from which the issues can be reasonably determined. *In re Equalization Appeal of Wagner*, 304 Kan. at 599. In determining if there is substantial competent evidence, we are not to reweigh the evidence or engage in de novo review. See K.S.A. 77-621(d); see also *In re River Rock Energy Co.*, 313 Kan. at 945.

A review of the 66-volume record in this action reveals that the hearing conducted by BOTA lasted for 10 days and included the presentation of multiple expert witnesses as well as the introduction of many pages of exhibits into evidence. As BOTA noted in its final decision, "[t]he parties' experts employed disparate appraisal methodologies and [espoused] varied legal theories to derive a market rent for the subject real property." After considering the evidence presented, BOTA found the appraisal report and testimony of Walmart's expert—Gerald Maier, MAI—to be persuasive. Maier valued the subject properties based on each of the standard appraisal approaches—the income approach, the sales comparison approach, and the cost approach.

Ultimately, BOTA determined that "Maier's income approaches (direct capitalization methodology) based on projected net operating income is the best indicator of the market value presented." However, BOTA found that it was appropriate based on the evidence to reduce the capitalization rates presented by Maier on each of the subject properties to various degrees. In reaching its decision, BOTA also considered the expert opinions offered by Johnson County. It found that the County relied heavily on build-to-suit comparables but "did not perform proper appraisal adjustments, as directed by *Prieb*, to ensure their derived appraisal inputs were free from any value attributable to the leased fee interest." Although the County's income approach utilized market income and expense data derived from a market study co-authored by its expert—Bernie Shaner,

21

MAI—the study did not contain analysis regarding how the build-to-suit comparables were illustrative of actual market rent.

Based on our review of the record as a whole, we conclude that BOTA's decision was based on substantial competent evidence. In particular, it was based on Maier's valuation opinions that were supported by comparables that reflected market conditions in an open and competitive market. In rendering his opinions regarding valuation of the subject properties, Maier examined sales of nine properties utilized for big-box retail stores. However, he excluded build-to-suit leases and leaseback sales as well as the sales of second generation leased properties. Maier testified that he focused on fee simple sales and adjusted the sale price for time and market conditions, location, quality and utility, and investment quality to derive a square foot unit value that he then applied to each of the subject properties.

Maier's income approach for each of the subject properties consisted of both a direct capitalization analysis and a discounted cash flow analysis. For his direct capitalization analysis, Maier rendered the opinion that second generation rents—where the property is vacant and available to be leased at market rates—were the most probative for determining actual market value of the fee simple estates of the subject properties. Maier testified that he adjusted each of the leases that he used as comparables for time and market conditions, lease terms, suite size, age and condition, location, quality of construction, and utility.

Again, it is not our role to reweigh the conflicting evidence. Instead, our role is to determine if there is substantial competent evidence in the record—when viewed as a whole—to support BOTA's decision. As noted above, to find a lack of substantial evidence, we must find that BOTA's decision is so wide of the mark to be outside the realm of fair debate. *In re Tax Appeal of Dillon Stores*, 42 Kan. App. 2d at 889.

22

Here, we find that BOTA appropriately considered the conflicting evidence presented by the parties and reached a reasonable decision based on the current status of Kansas law. We further find that Johnson County has failed to show that BOTA's final decision was so wide of the mark that it is outside the realm of fair debate. Without such a showing, we conclude that the County has failed to establish that BOTA's decision was not supported by substantial evidence in light of the record as a whole.

*BOTA's Decision Was Reasonable*

Lastly, Johnson County contends that BOTA's decision was unreasonable, arbitrary, or capricious. K.S.A. 77-621(c)(8). The test for determining if BOTA's conduct was arbitrary or capricious depends on the reasonableness of the action. An order is unreasonable if it is without foundation in fact. See *Tallgrass Prairie Holdings*, 50 Kan. App. 2d. at 659-60. Consequently, whether BOTA acted unreasonably, arbitrarily, or capriciously depends on the quality of its reasoning. See *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 569, 232 P.3d 856 (2010).

Johnson County does not support its contention that BOTA's order is unreasonable, arbitrary, or capricious with any factual argument or legal authority. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018). Issues not adequately briefed are deemed waived or abandoned. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018).

Even if the County had not waived or abandoned this issue, we find that it has failed to show that Maier's appraisal methodology was inconsistent with Kansas law or the USPAP. As a result, we find that it was reasonable for BOTA to adopt Maier's valuations with appropriate adjustments to the capitalization rates on the subject

23

properties. Likewise, we find that BOTA adequately explained the basis for reaching its decision. Thus, we conclude that BOTA's decision was not unreasonable, arbitrary, or capricious.

CONCLUSION

We conclude that Johnson County has failed to satisfy its burden of showing the invalidity of BOTA's decision regarding the valuation of the Walmart properties. We also conclude that the County has not shown that BOTA erroneously interpreted or applied Kansas law. Furthermore, we conclude that the County has not shown that BOTA's decision was not supported by substantial evidence in light of the record as a whole. Finally, we conclude that the County has failed to show that BOTA's decision was unreasonable, arbitrary, or capricious. We, therefore, affirm BOTA's full and complete opinion.

Affirmed.

* * *

LEBEN, J., dissenting: This case is about the proper role of courts. We decide legal issues involving every area of human endeavor, large and small, simple and complex. Yet because we are far from experts in every area of human endeavor, we usually do best by recognizing our limits and deciding only what must be decided in a given case. We can do harm when we elevate one side's position in a case on highly contested and fact-intensive issues into legal rules that must be applied in all cases.

That's what our court did—with no statutory language supporting that result— when it decided *In re Equalization Appeal of Prieb Properties*, 47 Kan. App. 2d 122, 275 P.3d 56 (2012). In so doing, the *Prieb* court "stepped outside its judicial review function to arrive at its conclusions." *In re Tax Appeal of River Rock Energy Co.*, 313 Kan. 936,

24

943, 492 P.3d 1157 (2021). It's time that we back away from the sweeping pronouncements made in *Prieb* on issues of real-estate appraisal, not law. By doing so, we would once again let the tax valuation of real estate be decided on a level playing field before the Board of Tax Appeals, which has the expertise to fairly judge the real-estate appraisal testimony presented to it.

Because I believe the *Prieb* decision improperly limited the Board of Tax Appeals' ability to decide this case, I would disavow the statements in *Prieb* that went beyond Kansas statutes and the court's proper role in determining the law. I would then send the matter back to the Board of Tax Appeals to fully consider the evidence presented by both Johnson County and the taxpayers without the limits imposed by *Prieb*. I therefore dissent from the majority's decision to affirm a Board of Tax Appeals decision that was unduly limited by *Prieb*.

There are two key problems with the approach taken by the *Prieb* court. First, the court went outside the bounds of proper judicial review to decide non-legal issues. The court phrased the main legal issue in the case to be whether the then-Court of Tax Appeals order was "in accord with Kansas law *and generally accepted appraisal practice.*" (Emphasis added.) 47 Kan. App. 2d at 128. Yet the court cited no Kansas statute that gave the court the authority to determine what was generally accepted appraisal practice. Of course, courts do sometimes decide that one expert's testimony should be accepted over another's. But in *Prieb*, the court rejected expert testimony that had been accepted by the fact-finder, the Court of Tax Appeals. And in doing so, the *Prieb* court went outside the record to determine proper appraisal practices. So in deciding what Kansas law meant in the appraisal of big-box stores, the *Prieb* court went far beyond any statute adopted by the Kansas Legislature and instead enshrined into Kansas caselaw the theory of a single expert as "generally accepted appraisal practice." Second, in a case with competing expert witnesses, the court rejected the fact-finder's acceptance of one expert's valuation opinion over another, finding the fact-finder's

25

accepted value "outside the realm of fair debate." 47 Kan. App. 2d at 137-38. That's highly unusual, and it couldn't have been done in *Prieb* without first placing legal limits on generally accepted appraisal practice so that some of the expert testimony relied on by the fact-finder would be excluded.

*Prieb* correctly held that Kansas property valuations for tax assessments are to be the value of the fee-simple estate; that's not challenged in the appeal now before us. But *Prieb* also said that it "agree[d] with one noted commentator," appraiser David Lennhoff, when he said in a published article that an appraiser "'theoretically should approach the valuation as if the property were vacant,'" not leased. 47 Kan. App. 2d at 132. The court then concluded that "*rental rates* contained in or *reflected by commercial build-to-suit leases* are not reflective of market conditions and *may not be utilized* for purposes of the income approach or the sales comparison approaches to value for ad valorem tax purposes in Kansas *without a disentanglement by adjustments that is beyond the scope of this appeal*." (Emphasis added.) 47 Kan. App. 2d at 135-36. Based on that, the court found the rate the Court of Tax Appeals had found reflective of market rates was "too wide of the mark" and could not be used. 47 Kan. App. 2d at 138.

That legal ruling in *Prieb* has become determinative in the later appeals of tax valuations of what are often called big-box stores like the Walmart and Sam's Club stores involved in this case. In cases like this since *Prieb*, the Board of Tax Appeals has rejected expert testimony using the rental rates found in build-to-suit leases. But experts for the taxing entities have said that those rates *do* reflect market rental rates. Because that was their professional opinion, they didn't engage in whatever a "disentanglement by adjustments that [was] beyond the scope of [the *Prieb*] appeal" might be. 47 Kan. App. 2d at 136. And that left the Board of Tax Appeals bound by *Prieb* to reject the taxing entities' valuations, which considered build-to-suit lease rates.

26

The expert whose view expressed in an article became the law in *Prieb*, Lennhoff, testified as a hired expert for the taxpayer in the cases now on appeal before us. He agreed that his 2009 article on big-box-store appraisals, cited in *Prieb*, generated controversy and multiple letters to the editor of the journal that printed it. What's clear from Lennhoff's testimony and that of other experts in our case is that all of this is hotly contested territory in the world of real-estate appraisal.

So how did this rule that properties must be valued as vacant—and build-to-suit rental rates altogether ignored without "disentanglement"—become *Kansas law* rather than just the opinion of appraiser Lennhoff? What else did the *Prieb* court cite in support of its new legal rules?

The court also cited an article by someone named Shapiro with the title, "Big-Box Retailers Beware How Assessors Overvalue Your Property." 47 Kan. App. 2d at 135. The web URL found in *Prieb* for that article no longer works, but what looks like the same article is still online. See Michael B. Shapiro, *Big-Box Retailers Beware How Assessors Overvalue Your Property*, National Real Estate Investor, https://perma.cc/5HSM-J4LZ (last visited Sept. 2, 2021). It's not a scholarly article and cites no legal authority (though it does analogize the valuation of big-box stores to made-to-order men's suits). In Johnson County's brief in the case now before us, it calls the Shapiro piece "an advertisement disguised as an article" and points out that although the link in *Prieb* to the article no longer works, that link went to the website of the American Property Tax Counsel organization, which consists of attorneys who represent property owners in tax disputes against the government.

The *Prieb* opinion also cited some caselaw from other states. It's not clear to me, though, that they are especially useful in deciding this point of Kansas law. The only out-of-state case given more than a quick citation was the Wisconsin Supreme Court's opinion in *Walgreen Co. v. City of Madison*, 311 Wis. 2d 158, 752 N.W.2d 687 (2008).

27

It's true, as the *Prieb* opinion explained, that the Wisconsin Supreme Court in *Walgreen Co.* held under Wisconsin law that "a real property assessment should not be based on factors such as unusual financing or above market rent that are not normal conditions of sale reflected in the value of a fee simple property interest." 311 Wis. 2d at 190. But an important feature of Wisconsin law wasn't mentioned in *Prieb*: a Wisconsin statute required that valuations be done under rules set out in that state's Property Assessment Manual unless the manual contradicted Wisconsin law. See Wis. Stat. § 70.32(1); *Walgreen Co.*, 311 Wis. 2d at 173; *Marathon Petroleum Co. LP v. City of Milwaukee*, 381 Wis. 2d 180, 192, 912 N.W.2d 117 (Ct. App. 2018). And the Wisconsin Supreme Court found that the manual had no language that "allows appraisers to *increase* the market value of the property when the lease rate is *above* the market rate." *Walgreen Co.*, 311 Wis. 2d at 178. Thus, if a build-to-suit rental rate appeared to be above the market rental rate, the Wisconsin manual didn't allow using the higher build-to-suit lease rate to determine property value. Kansas, of course, doesn't use the Wisconsin Property Assessment Manual or have a statute making that manual authoritative absent already conflicting state law.

So *Walgreen Co.* is an example of why out-of-state cases are of limited value in tax cases. While it may help to see what approaches other states take to an issue, each state has its own constitutional and statutory tax provisions. And when one looks to see what Kansas statutes or caselaw the *Prieb* court relied on, one finds nothing to support its key legal conclusions.

In the section of the *Prieb* opinion deciding that Kansas law precludes real-estate appraisers from using built-to-suit lease rates without disentanglement adjustments, the court cites two Kansas cases involving tax law:

- The first case involved the valuation of a natural-gas-processing plant. *In re Equalization Proceeding of Amoco Production Co.*, 33 Kan. App. 2d 329, 102

28

P.3d 1176 (2004). In it, the county urged the use of an income-based valuation since the plant produced substantial income. The taxpayer urged the use of a cost-based valuation, and the Board of Tax Appeals adopted a valuation based on that method. Based on the expert testimony in support of the cost-based valuation, our court found that "substantial competent evidence appears to support BOTA's determination." 33 Kan. App. 2d at 340. The *Prieb* court said that the *Amoco Production Co.* opinion had "acknowledged that Kansas law contemplates valuation of the fee simple interest in real property." 47 Kan. App. 2d at 131. As I've noted already, all agree here that it's the fee-simple interest that should be valued.

- The second case involved the valuation of properties around Council Grove City Lake. *In re Tax Complaint of Wine*, 46 Kan. App. 2d 134, 260 P.3d 1234 (2011). The City of Council Grove owned the land but leased parcels to tenants, many of whom had their own mobile homes on the leased lakefront lots. Morris County valued the mobile homes based on sales in which both mobile homes and the underlying ground leases had been sold together. But the Court of Tax Appeals held that this improperly conflated the City's interest (the value of the land, currently leased) with the tenant's (the value of the mobile home). That our court affirmed in *Wine* isn't surprising since a Kansas statute we cited in the opinion, K.S.A. 2010 Supp. 79-412, provided that when land and the improvements on it aren't owned by the same owner, they must be valued separately. See 46 Kan. App. 2d at 140. The City's fee-simple ownership included all of the owner's rights to the lease; the tenant's property interest for valuation purposes was limited to the value of the mobile home.

Neither case supports the key *Prieb* holding precluding consideration of build-to-suit lease rates without disentanglement adjustments.

If a specific appraisal practice is to be required by Kansas law, that determination should be made by the Kansas Legislature. Indeed, sometimes it has directed that certain appraisal practices be used in tax appraisals. See K.S.A. 79-506(a) (adopting the Uniform Standards of Professional Appraisal Practice for valuing real property in tax appraisals). But the *Prieb* opinion doesn't cite any Kansas statutes directing that specific appraisal practices apply.

So what statutes passed by the Kansas Legislature does the *Prieb* court rely on? It cited only two tax statutes: K.S.A. 79-501, which requires that "[e]ach parcel of real property shall be appraised at its fair market value," and K.S.A. 79-503a, which defines fair market value as "the amount . . . of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion." The court also noted that K.S.A. 77-201, *Eighth*, provides that "land," "real estate," and "real property" include "all rights to them and interest in them, equitable as well as legal."

From these provisions, the *Prieb* court concluded "that the fair market value statute values *property* rights, not *contract* rights." 47 Kan. App. 2d at 131. That conclusion isn't controversial—the assessing authorities should determine the fair-market value of the fee-simple interest. But the fee-simple interest is "the complete bundle of property rights that can be privately owned." 47 Kan. App. 2d 122, Syl. ¶ 5. If the land has been leased for the next 20 years at a fixed lease rate, the fee-simple owner, as a right of property ownership, will be entitled to that income. Nothing in K.S.A. 79-501 or 79-503a tells us to exclude consideration of it.

What happened in *Prieb*, then, is that the court turned a question of what should be the law in Kansas in appraising big-box stores into a question of what should be the best practice in real-estate appraisals. The court then answered that question based on its examination of appraisal literature outside the record and some discussion in out-of-state

30

caselaw. It did so even though no Kansas statute required or suggested this path. And the court decided what was generally accepted appraisal practice not based on Kansas law but on a narrow set of other information.

With that background on the *Prieb* opinion, let me return to the proper role of the courts—specifically in tax-assessment appeals. After a county has determined the assessed value for a real-estate parcel, the taxpayer can appeal to the Kansas Board of Tax Appeals. That three-member board hears the evidence and decides the proper value; it makes the fact-findings and legal conclusions that a court then reviews for legal error. K.S.A. 79-1609; K.S.A. 74-2426(c).

The Legislature made the Board of Tax Appeals a body with special expertise. One member must be a lawyer; one must be a certified public accountant; and one must be a real-estate appraiser. K.S.A. 74-2433(a). Any members who aren't already certified real-estate appraisers must take a sequence of courses on real-property appraisal and Kansas property-tax law. K.S.A. 74-2433(e). So the Board of Tax Appeals has the technical expertise to evaluate the competing views found among real-estate appraisers.

Our court consists of 14 regular judges; the only statutory requirement is that we be lawyers and have practiced law for at least 10 years. K.S.A. 2020 Supp. 20-3020(d); K.S.A. 20-105. The members of our state's Supreme Court have the same qualification requirements. K.S.A. 20-105. We have expertise in the law but not in real-estate appraisal practices.

Given these differences—and the Board of Tax Appeals' role as the fact-finder in these cases—our role in reviewing its decisions is and should be a limited one. We review its decisions to make sure they are supported by substantial evidence, but most of the time we must affirm if there is evidence to support the decision. (*Prieb* is an outlier

on this point.) Our main role in most cases is making sure that the Board of Tax Appeals has correctly applied Kansas law. That's also the role we are best equipped to serve.

But in *Prieb*, the court expanded this role of deciding legal issues so that it also included—as a matter of law—what were "generally accepted appraisal practice[s]." The court then went outside the record to determine that. And the court determined that appraisal practices contrary to its view, even if supported by expert testimony in the case, could not be considered under Kansas law in later cases.

That takes us to the case now before us on appeal. The record is extensive, and there's no need to set out the evidence in detail here. Both sides presented experts with excellent credentials. The County's witnesses included several real-estate appraisers and even a law professor. The taxpayers presented competing valuation testimony, and the disputes centered on the use of build-to-suit rental rates in appraising the properties.

The Board of Tax Appeals noted that Bernie Shaner, one of the County's experts, testified that he used the build-to-suit rates as comparables because "he determined they were illustrative of market rent." The Board noted that another County expert, Peter Korpacz, testified that he used build-to-suit comparables because they "were reflective of the market when the rent did not include any compensation for non-realty components, and both the lessor and lessee determined the contract rent was at market rates." Similarly, Robert Marx, another expert for the County, testified "that build-to-suit and sale leaseback rental rates could be used to determine fee simple rental rates if any non-realty components were properly excluded."

But the Board of Tax Appeals simply rejected this testimony based on *Prieb*. The Board said that "Kansas law . . . is well settled on the legal disputes presented and the County admittedly is making its record for an appeal seeking the reversal of Kansas

32

precedent, most specifically, [*Prieb*]." The Board found that the taxpayers' appraisal evidence "better adhered to the *Prieb* mandate."

The essence of *Prieb* is that the leases now in place and generating an income stream for the owner of the buildings housing these big-box stores—leases that may be in place for many years to come—must be ignored altogether. That makes no sense to me either under Kansas law or based on real-estate appraisal principles. In *Walgreen Co.*, although the court was bound by Wisconsin's Property Assessment Manual to ignore the build-to-suit lease rates, then-Chief Justice Shirley Abrahamson explained in a concurring opinion why this made no sense to her:

> "Property is assessed at the amount the property would sell for as a result of arm's-length negotiations in the open market between an owner willing to sell and a buyer willing to buy. A buyer generally would pay more for real property that has a high stream of income from a lease than for property with a lower stream of income from a lease. Because the sum at which a property will be bought and sold is dictated in part by the income from a lease attaching to the property, the actual income stream from the lease should be capitalized to reach the assessed value of the property." *Walgreen Co.*, 311 Wis. 2d at 209 (Abrahamson, C.J., concurring).

Now perhaps the actual income stream from a particular lease *should* be adjusted in some way to make it more comparable to market rental rates in the area. But that's a matter for the real-estate appraisers to sort out, with the Board of Tax Appeals deciding how to resolve their competing valuations.

The majority appeals to respect for past decisions, stare decisis, as one basis for sticking with *Prieb*. I don't think that's appropriate here:

- First, the reliance interest isn't strong. Owners of big-box stores are sophisticated parties, and they know that this is a hotly contested issue nationally. They also

know that in Kansas they have only the decisions of the state's intermediate appellate court to rely on—the Kansas Supreme Court hasn't addressed it. And any changes that might occur, should the Kansas Supreme Court decide the issue differently than *Prieb*, won't affect past tax years that aren't already on appeal. So they still will gain the benefits of *Prieb* for many years; they simply won't be able to rely on that rule permanently unless the Kansas Supreme Court finds a closer connection between the key *Prieb* ruling and Kansas law than I have.

- Second, the effect of *Prieb* has been to lessen the tax load of the owners of these large stores. That necessarily either leads to a reduced budget for local governments or a transfer of some of the tax load to homeowners and other taxpayers. Given that context, the issue merits fresh consideration.

- Third, *Prieb* (and later decisions, which applied *Prieb*) are from our court, not the Kansas Supreme Court. We decide hundreds of cases each year, so it's less reasonable to suggest that any failure of the Kansas Legislature to act suggests approval of (or acquiescence in) our decisions.

I would therefore disavow the portions of the *Prieb* opinion that unduly limit what may be considered in determining appraised value in these cases; tax valuation of the fee-simple interest need not exclude consideration of build-to-suit leases. I would then remand the case for further consideration by the Board of Tax Appeals without the constraint of those portions of the *Prieb* opinion.